# UNITED STATES DISTRICT COURT
for the
District of New Mexico

FILED
United States District Court
Albuquerque, New Mexico

Mitchell R. Elfers
Clerk of Court

In the Matter of the Search of )
White 2023 Nissan Altima Sedan )
bearing WA license plate number ) Case No. 24-MR-1876
CHD7888 and VIN )
1N4BL4DV0PN387603. )
)

**APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS**

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

located in the _____ District of New Mexico, there is now concealed *(identify the person or describe the property to be seized)*:


The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
  ☑ evidence of a crime;
  ☐ contraband, fruits of crime, or other items illegally possessed;
  ☐ property designed for use, intended for use, or used in committing a crime;
  ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) | Possession with Intent to Distribute Fentanyl |

The application is based on these facts:

  ☑ Continued on the attached sheet.
  ☐ Delayed notice of _____ days *(give exact ending date if more than 30 days: _____)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

JONATHAN VIGIL   Digitally signed by JONATHAN VIGIL
                Date: 2024.10.15 07:09:15 -07'00'

*Applicant's signature*

Jonathan Vigil, Special Agent, Bureau of Indian Affairs
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone *(specify reliable electronic means)*.

Date: October 15, 2024

*Judge's signature*

City and state: Albuquerque, New Mexico    Hon. Laura Fashing, U.S. Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| IN THE MATTER OF THE SEARCH OF<br><br>White 2023 Nissan Altima Sedan bearing WA license plate number CHD7888 and VIN 1N4BL4DV0PN387603. | Case No. _____ |
|---|---|

**AFFIDAVIT IN SUPPORT**

**AFFIDAVIT IN SUPPORT OF SEARCH WARRANT**

Your Affiant, Jonathan Vigil, Special Agent with the Department of Interior, Bureau of Indian Affairs, Office of Justice Services, Division of Drug Enforcement, being first duly sworn, hereby deposes and states as follows:

I. **INTRODUCTION AND AGENT BACKGROUND**

1. I make this Affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a warrant to examine a white 2023 Nissan Altima Sedan bearing Washington license plate number CHD7888 and Vehicle Identification Number 1N4BL4DV0PN387603 (the "SUBJECT VEHICLE"), which is more particularly in Attachment A (the "SUBJECT VEHICLE"), and to extract documentation information set forth in Attachment B, which represents evidence and/or instrumentalities of the criminal violations further described below.

2. I am a Special Agent with the Bureau of Indian Affairs (BIA) United States Department of the Interior (DOI) currently assigned to the Division of Drug Enforcement (DDE), and as such, am an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18 and Title 21, of the United States Code,

including violations which occur on Indian Reservations, also known as Indian County, within the Special Maritime and Territorial Jurisdiction of the United States.

3. Prior to becoming a BIA SA, and between 2010-2018, I was a Patrol Officer with the Ohkay Owingeh Tribal Police Department in New Mexico. I attended and graduated from the Federal Law Enforcement Training Center Land Management Police Training Program. In April 2012, I was a Police Officer at the Pojoaque Tribal Police Department in New Mexico, in November 2015, I became a Police Officer with the BIA-Northern Pueblos Agency (NPA).

4. In March 2018, I was employed with the DOI, BIA, Office of Justice Services, and Division of Drug Enforcement stationed in Ohkay Owingeh, New Mexico, as a BIA-DDE K9 Police Officer. I was assigned to the Northern Pueblos Agency, where I patrolled and stayed highly visible within high-crime areas while enforcing traffic control to deter criminal activity. I conducted inter-city and highway interdiction of vehicles and persons responsible for human trafficking, transporting illegal narcotics, illegal weapons, and U.S. Currency into the Native American Reservations.

5. I have conducted multiple investigations relating to violations of the Major Crimes Act and federal narcotics violations, including, but not limited to, felony and misdemeanor cases involving illicit drugs and marijuana cultivation within Indian Country. I conducted several criminal narcotics investigations in my assigned duty station and issued summons through the Central Violations Bureau.

6. Currently, I am a BIA Special Agent assigned to the Division of Drug Enforcement in the Sells, Arizona Office. I have primary investigative responsibility for federal drug violations occurring in Indian Country. I have completed the DOI Investigators Training Program in Brunswick, Georgia, and have received training in conducting long-term investigations, crime scene processing, undercover operations, surveillance, report writing, control tactics, and crime scene photography.

7.      Through my training and experience, I have become familiar with the operations and practices of drug, weapons, and human smuggling organizations. In particular, I am familiar with the manner and methods smuggling organizations use to distribute and sell illegal drugs and firearms illegally. Further, I am familiar with counter-surveillance efforts and how smuggling organizations utilize and modify mobile conveyances to facilitate smuggling contraband like narcotics and firearms.  I have initiated and participated in criminal investigations of individuals and organizations for violating tribal, state, and federal laws. Additionally, I have spoken with numerous defendants and witnesses whose testimony led to individuals' arrests, indictments, and convictions for violating tribal, state, and federal laws. I am familiar with federal procedures involved in the execution of federal search warrants and have participated in executing numerous tribal, state, and federal search warrants involving the possession, distribution, and smuggling of narcotics and firearms.

8.      In preparing this Affidavit, I conferred with other law enforcement officials who share the opinions and conclusions stated herein.  I have personal knowledge of the following facts or have learned them from other law enforcement officers.  I also relied on my training, experience, and background in law enforcement to evaluate this information. Since this Affidavit is being submitted for the limited purpose of establishing probable cause for the requested warrant, I have not set forth all of the relevant facts known to law enforcement officers.

II.     **BASIS FOR PROBABLE CAUSE**

9.      On April 7, 2024, at or about 13:06 hours, BIA Law Enforcement Officer Justin Williams was on duty, in full uniform, in his marked K-9 patrol unit.  LEO Williams was parked in the median monitoring traffic on Interstate 40 near mile marker 341 in Sanders, Arizona.  LEO Williams observed the SUBJECT VEHICLE drive by. The driver's arms were locked straight out, and the driver, later identified as Luis Angel

PULIDO, stared at LEO Williams as he drove by. The SUBJECT VEHICLE was traveling eastbound in the fast lane.

10.     LEO Williams left the median and began following the SUBJECT VEHICLE. As the SUBJECT VEHICLE approached exit 343, LEO Williams observed it begin to exit onto the on-ramp and turn without signaling continuously at least 100 feet before turning, thereby violating Arizona Revised Statue Section 28-754(B) (Turning movements and required signals). As LEO Williams continued following the SUBJECT VEHICLE, it drove back onto the on-ramp onto Interstate 40 eastbound. LEO Williams observed the SUBJECT VEHICLE driving on the white solid line near the shoulder of the highway twice, thereby violating Arizona Revised Statue Section 25-729(1) (Driving on roadways laned for traffic). At that point, LEO Williams conducted a traffic stop on the SUBJECT VEHICLE on the Exit 346 off-ramp.

11.     LEO Williams contacted PULIDO, advised him of the reasons for the stop, and identified PULIDO by the driver's license PULIDO presented. PULIDO advised the SUBJECT VEHICLE was a rental car and did not have the registration. LEO Williams asked PULIDO to exit the vehicle and sit in the front seat of his patrol vehicle as LEO Williams conducted the enforcement action. PULIDO complied and exited the SUBJECT VEHICLE. LEO Williams observed PULIDO exit the SUBJECT VEHICLE, leaving the front driver and passenger windows open.

12.     At the patrol vehicle, LEO Williams engaged in a general conversation with PULIDO. At the same time, LEO Williams conducted records checks on the SUBJECT VEHICLE, PULIDO, and completed the citation for the violations observed by LEO Williams. The vehicle record check on the SUBJECT VEHICLE, which returned to EAN HOLDINGS LLC, also known as Enterprise Rent-A-Car.

13. During his conversation with LEO Williams, PULIDO stated that he was headed back to Albuquerque, New Mexico, after traveling to Phoenix on April 5, 2024, staying two nights there, and visiting family.

14. PULIDO provided LEO Williams with the rental agreement for the SUBJECT VEHICLE on his Apple iPhone. LEO Williams observed an email with the Enterprise Rental Agreement for the SUBJECT VEHICLE. LEO Williams read the rental agreement and observed that Eric Torrez was the individual who rented the vehicle. PULIDO stated that his cousin "Luis" rented the SUBJECT VEHICLE for him to use but could not provide his cousin's full name when asked. PULIDO advised he did not know who "Eric" was. PULIDO told LEO Williams that Luis (his cousin) was the person who rented the SUBJECT VEHICLE and that he could call him if he needed to. LEO Williams read PULIDO the rental agreement. PULIDO attempted to say Eric was his cousin but did not know his last name.

15. At approximately 13:21 hours, the BIA Office of Justice Services, Division of Drug Enforcement K9 Handler LEO Peter Rodriguez was driving westbound on I-40. LEO Rodriguez observed a BIA-marked unit at a traffic stop near exit 346. LEO Rodriguez continued to the next exit and turned around to LEO Williams' location.

16. Upon arriving, LEO Rodriguez observed the SUBJECT VEHICLE parked in front of the marked BIA Patrol vehicle. LEO Rodriguez exited his vehicle and observed LEO Williams talking to the driver and conducting business related to the traffic stop. LEO Rodriguez approached the SUBJECT VEHICLE and noticed that the front driver and passenger windows were open and no one was inside. He returned to his vehicle and deployed his assigned narcotic detection canine, "Reno," to conduct a free-air sniff of the SUBJECT VEHICLE.

17. PULIDO became concerned as he saw LEO Rodriguez and asked if it was considered a search. LEO Williams advised PULIDO that it was not a search but a free-air sniff of the SUBJECT VEHICLE. PULIDO disagreed with LEO Williams.

18. "Reno" is a dual-purpose, trained narcotic detection and patrol canine. Together, Reno and LEO Rodriguez are a certified K-9 team with current training and deployment records. Reno and LEO Rodriguez attended a formal DOI, BIA, and Basic K-9 Course and graduated on June 17, 2020. Further, Reno and LEO Rodriguez are certified as a Detection Canine Team through the State of Oklahoma - Council Law Enforcement Education and Training under License #K9-21-3687, which expires on June 17, 2024. Additionally, Reno and LEO Rodriguez are certified through the American Working Dogs American Working Dog Advocate as a Narcotic and Patrol Detector dog as of October 13, 2023; their certification expires on October 13, 2024.

19. Reno is certified to detect the odor of scheduled controlled substances, such as marijuana, cocaine, heroin, and methamphetamine. Upon locating these scheduled controlled substances, Reno will alert through numerous behavioral changes that can be seen and heard. If Reno gets to the source of the odor, he shows a passive final response: he is trained to sit down or lie down and stare at the source of the odor.

20. LEO Rodriguez conducted the sniff where no one present knew the solution or answer to the search. LEO Rodriguez deployed Reno on lead and commanded Reno to begin to sniff the airspace. Reno started the sniff at the rear driver's side of the SUBJECT VEHICLE.

21. Reno alerted through numerous behavioral changes to the odor of one or more of the controlled substances that he is trained to detect. This alert may also indicate items recently contaminated with or associated with the odor of one or more controlled substances. The alert behavior that LEO Rodriguez saw and heard Reno display near the rear driver's side of the SUBJECT VEHICLE included:

      a. Quickly turning his head towards the SUBJECT VEHICLE ;

      b. Turing his body left, towards the SUBJECT VEHICLE ;

      c. Slowing his search SUBJECT VEHICLE ;

      d. Turning his nose directly towards and at the SUBJECT VEHICLE ;

      e. Moving his tail rapidly;

      f. Leaning his body axis forward towards the SUBJECT VEHICLE;

      g. Changing his breathing pattern to breathe more deeply;

      h. Changing his sniffing pattern to become deeper by purging/forcing the air out of the sides of his nose;

      i. Closing his mouth (which forces all of the air intake through the dog's nose);

      j. Not leaving the SUBJECT VEHICLE and jumping up into the open driver window without commands;

22. Inside the SUBJECT VEHICLE, Reno displayed alert behavior by going to the rear seat and sniffing intensely. Reno did not move from the rear seat.

23. LEO Rodriguez grabbed Reno's lead and continued the sniff around the rest of the outside of the SUBJECT VEHICLE. At the front passenger door, Reno displayed a final response by stopping and sitting directly next to the front passenger door of the SUBJECT VEHICLE with his nose 3-5 inches from the sedan while staring at the SUBJECT VEHICLE continuously without moving.

24. LEO Williams issued PULIDO a written warning for the violations of failing to signal within 100 feet and failing to maintain lane. He also advised PULIDO that his narcotic detection K9 alerted to an odor of narcotics coming from the vehicle.

25. Based upon the alert from a certified Narcotic Detector Dog, and the reading of that alert and by certified K9 LEO Rodriguez, LEO WILLIAMS determined that probable cause existed to search the SUBJECT VEHICLE based on the presence of odor

of scheduled controlled substances, such as marijuana, cocaine, heroin, or methamphetamine, and/or the presence of items recently contaminated with, or associated with, the odor of scheduled controlled substances, such as marijuana, hashish, cocaine, heroin, or methamphetamine.

26. LEO Rodriguez requested PULIDO's permission to search the SUBJECT VEHICLE, but PULIDO declined to grant consent. PULIDO informed LEO Williams that he had seen an additional black bag in the trunk while placing his bag there and was unsure of its contents.

27. LEO Williams began to search the SUBJECT VEHICLE. When he opened the trunk, he located two black duffle bags. One had white symbols on its handles. The second bag, a smaller 21-inch x 12-inch black duffel, contained multiple clear gallon zip-lock plastic bags filled with numerous small blue round pills of suspected fentanyl.

28. LEO Williams detained PULIDO and placed him in his patrol vehicle. After LEO Williams read PULIDO his *Miranda* rights, PULIDO refused to speak with law enforcement.

29. The LEOs continued with the vehicle search. LEO Rodriguez searched the larger duffle bag with white handles and located clothing and a 13-inch x 9-inch tan bag containing $2,528.00 of United States Currency. The LEOs did not locate any other cellular telephones within the vehicle.

30. The contraband, the black duffle bag containing multiple packages of small round pills, the tan bag containing the currency, and the cellular telephone were transported to the Navajo Nation Police Substation. I was tasked with weighing the pill packages at the Substation. When I opened the black duffle bag, I observed multiple plastic zip-lock bags containing small blue round pills. Inside the black duffle bag were 20 clear plastic zip-lock bags containing small, round blue pills labeled "M/30." The total weight of the pills, including packaging, was approximately 47 pounds (or 21,318.841 grams).

31. Using an MX 908 Portable Mass Spectrometer, BIA Special Agent Collin Pilcher field-tested one small round blue pill from one of the plastic zip-lock bags. The pill tested positive for fentanyl (N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propenamide), a Schedule II controlled substance. From my training and experience, I know that the amount of pills found in the SUBJECT VEHICLE (approximately 47 pounds) is consistent with distribution.

32. DOI BIA Office of Justice Services ("OJS") DDE arrested PULIDO during the traffic stop on April 7, 2024. The next day, on April 8, 2024, a complaint was filed in the District of Arizona, charging PULIDO with violating 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(vi) (Possession with Intent to Distribute Fentanyl). *See United States v. Luis Angel Pulido*, D. Ariz. Case No. 24-4093. On May 7, 2024, the grand jury returned a one-count indictment charging PULIDO with Possession with Intent to Distribute Fentanyl, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C). *See United States v. Luis Angel Pulido*, D. Ariz. Case No. CR-24-08044-DWL.

33. At the same time the evidence listed in paragraph 30 was transported to the Navajo Nation Police Substation, the SUBJECT VEHICLE was towed to Speedway Towing, located at 545 Allison Road in Gallup, New Mexico. On April 8, 2024, at approximately 12:20 p.m., I took custody of the SUBJECT VEHICLE at Speedway Towing in Gallup, New Mexico. While photographing the SUBJECT VEHICLE, I observed a green paper document on the driver's seat. The document was a Holiday Inn Hotel parking pass with the number 24656346 handwritten on it. The SUBJECT VEHICLE was then transported to the Federal Bureau of Investigations Office at 2300 U.S. Route 66, Gallup, New Mexico, where it was parked in the secure lot and sealed with evidence tape. The SUBJECT VEHICLE was stored at this location until April 10, 2024, when BIA SA Pilcher retrieved it and transported it to the HSI Office in Albuquerque, New Mexico.

34. Since its seizure by BIA on April 8, 2024, the SUBJECT VEHICLE has been in the continuous possession of law enforcement, and is currently stored at the U.S. Homeland Security Investigations Office at 5441 Watson Drive SE, Albuquerque, New Mexico.  In my training and experience, I know that the SUBJECT VEHICLE has been stored in a manner in which the contents are, to the extent material to this investigation, in substantially the same state as they were when the SUBJECT VEHICLE first came into the possession of BIA officers. BIA OJS DDE has current custody of the SUBJECT VEHICLE. Although DOI BIA OJS DDE might already have all necessary authority to examine the SUBJECT VEHICLE, I seek this additional warrant out of an abundance of caution to ensure that an examination of the vehicle will comply with the Fourth Amendment and other applicable laws.

### III.   ITEMS TO BE SEIZED

35. Based upon the facts contained in this Affidavit, I submit there is probable cause to believe that the items listed in Attachment B will be found in the contents of the SUBJECT VEHICLE.

36. Based on the information provided above and during the initial search of the vehicle, a Holiday Inn parking pass was observed on the front passenger seat of the SUBJECT VEHICLE. This pass, along with other potential documents could provide evidence of PULIDO's travel.

37. The presence of the Holiday Inn parking pass suggests PULIDO may have stayed at or planned to stay at a Holiday Inn Hotel, which could further support or refute claims regarding PULIDO's whereabouts and activities during the relevant timeframe. Additionally, documents such as receipts (including receipts from hotels, gas stations, convenience stores, and grocery stores), travel itineraries, or maps found within the vehicle could reveal information on PULIDO's movements, associations, and intentions.

38. The discovery of these travel-related documents could reveal additional locations tied to the criminal activity under investigation. Such evidence is likely to corroborate or challenge other evidence obtained, thereby assisting in constructing a more comprehensive narrative of PULIDO's actions.

39. I respectfully request a warrant to search the 2023 white Nissan Altima bearing Arizona plate CHD7888 for any documents or items related to PULIDO's travel plans, including but not limited to the aforementioned Holiday Inn parking pass, hotel receipts, itineraries, maps, and any other relevant materials that may be found within the vehicle.

40. *Manner of execution.* Because this warrant seeks only permission to search a vehicle already in law enforcement's possession, the execution of this warrant does not involve physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize the execution of the warrant at any time in the day or night.

41. The white 2023 Nissan Altima, bearing Washinton license plate number CHD7888 and Vehicle Identification Number 1N4BL4DV0PN38760, has been in the exclusive custody/control of law enforcement since it was seized on April 8, 2024. The vehicle is in the same or substantially same conditions as it was when it was seized.

### IV. CONCLUSION

35. I respectfully submit there is probable cause to believe that the items listed in Attachment B, which constitute evidence and/or instrumentalities of violations of 21 U.S.C. § 841(a)(1) and (b)(1)(A)(vi) (Possession with Intent to Distribute Fentanyl), are present inside the likely to be found in the SUBJECT VEHICLE further described in Attachment A. Thus, I respectfully request that a warrant be issued authorizing the Bureau of Indian Affairs, with appropriate assistance from other law enforcement officers, to enter

\\

the said vehicle and therein search for, seize, and examine the items set forth above and in Attachment A.

JONATHAN VIGIL
Digitally signed by JONATHAN VIGIL
Date: 2024.10.15 07:10:25 -07'00'

Special Agent Jonathan Vigil
Bureau of Indian Affairs, Office of Justice Services, Division of Drug Enforcement

Sworn to telephonically this __15th__ day of October, 2024.

_____
HONORABLE LAURA FASHING
United States Magistrate Judge

## ATTACHMENT A

### **DESCRIPTION OF PROPERTY TO BE SEARCHED**

The property to be searched is the following vehicle (the "SUBJECT VEHICLE"):

    1.    A white 2023 Nissan Altima Sedan bearing Washington license plate number CHD7888 and Vehicle Identification Number 1N4BL4DV0PN387603, which is currently located at the US Homeland Security Investigations Office, 5444 Watson Drive SE, Albuquerque, New Mexico.

**ATTACHMENT B**

**ITEMS TO BE SEARCHED AND SEIZED**

Any records and information found within the SUBJECT VEHICLE that relate to violations of 21 U.S.C. 841 (a)(1) and (b)(1)(A)(vi) (Possession with Intent to Distribute Fentanyl) including:
1. Any records related to possession of the vehicle;
2. Any records or indicia of travel, including:
   a. Receipts (including receipts from hotels, gas stations, convenience stores, and grocery stores).
   b. Parking passes (including a Holiday Inn Parking Pass); and
   c. Maps or printed driving directions.